# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.S., J.S.-1, and P.S.**

**No. 17-0871** (Morgan County 16-JA-07, 08, and 09)

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.S.-2, by counsel Kimberley D. Crockett, appeals the Circuit Court of Morgan County's August 29, 2017, order terminating her parental rights to M.S., J.S.-1, and P.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael Donadieu, filed a response on behalf of the children in support of petitioner's appeal. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her parental rights despite her successful completion of an improvement period and against the weight of the evidence, and in denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, the DHHR filed an abuse and neglect petition against the parents after learning that law enforcement was dispatched to the family's home due to then eleven-year-old C.M.'s call for assistance.[2] According to the DHHR, the parents locked C.M. in a shed as punishment over the course of two days. On the first day, the father locked C.M. in the shed while he was at work and petitioner was in the home. The father returned him to the shed the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as J.S.-1 and J.S.-2, respectively, throughout this memorandum decision.

[2]Petitioner voluntarily relinquished her parental rights to C.M. during the proceedings below. C.M.'s biological father is deceased. C.M. is not at issue on appeal.

next morning when he left for work. The shed had no heat, no electricity, and no bathroom, and temperatures during those two days were extremely cold. On the second day of being locked in the shed, C.M. escaped and sought help. The DHHR also alleged that the parents locked the child overnight in the bathroom without food. Finally, the DHHR alleged that petitioner failed to protect C.M. from the father's conduct. An amended petition was filed later in February of 2016 in order to include P.S., who was born within two days of the initial petition's filing. The parents waived their preliminary hearing.

In April of 2016, the circuit court held an adjudicatory hearing during which the parents stipulated to essential allegations contained in the petition. The circuit court accepted the parents' stipulations, adjudicated them as abusing parents, and granted them post-adjudicatory improvement periods.

Petitioner moved the circuit court for an extension of her post-adjudicatory improvement period in September of 2016, citing a delay in setting up individualized counseling sessions and a general need for additional time to comply with the terms of her improvement period. The circuit court granted petitioner's motion. In December of 2016, a multidisciplinary team ("MDT") meeting was held and the members elected to move forward with a reunification plan for the family, determining that petitioner would complete services around March of 2017. Based upon the MDT's plan, petitioner requested a second extension to her post-adjudicatory improvement period, which the circuit court granted.

In February of 2017, petitioner was sentenced to six months of incarceration after being convicted for misdemeanor child abuse related to the allegations contained in the petition. Petitioner moved the circuit court for a post-dispositional improvement period in March of 2017.

The circuit court held a dispositional hearing over the course of three days throughout May and June of 2017.[3] The circuit court heard testimony from several witnesses, including service providers, who all testified that petitioner had appropriately complied with services. While the parents' therapist believed a six-month post-dispositional improvement period would be successful, she testified that the parents would need intensive, significant counseling which could occur after the children were returned to the home. The therapist stated counseling would probably need to occur twice weekly for one year. Four of the parents' neighbors testified that the parents seemed like a normal couple, were affectionate parents, and always cared for the children. They opined that the shed incident was an anomaly based upon their observations of the family over the years. A DHHR worker testified that the case plan was for reunification until February of 2017, when the parents were incarcerated. She testified that, at that point, the children would have been out of the home for over fifteen months. Further, the DHHR noted that they discovered that the father had previously voluntarily relinquished his parental rights to three children after being involved in an abuse and neglect proceeding in Virginia.

---

[3]Petitioner completed her criminal sentence and was released from incarceration around the time the hearings took place.

The parents also testified that they understood their prior actions were wrong and that locking C.M. in the shed was an inappropriate form of discipline. Petitioner testified that, after receiving services, she learned that she should have obtained assistance for her son much sooner and that she has many resources available to help her maintain a healthy, appropriate relationship with her children. After hearing evidence, the circuit court found that, although the parents had participated in services, they failed to present any testimony regarding their ability to apply the techniques they learned. Further, the circuit court found that petitioner's testimony showed that she had no ability to make changes in her parenting and demonstrated an unwillingness or inability to change. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected and that termination was necessary for the children's welfare.[4] It is from the August 29, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her motion for a post-dispositional improvement period when the evidence demonstrated that she successfully completed her post-adjudicatory improvement period. Specifically, petitioner relies heavily on the testimony of service providers, a therapist, her neighbors, and her own testimony, all of which, she argues, demonstrates that she would have successfully completed a post-dispositional improvement period had it been granted. We disagree. Pursuant to West Virginia Code § 49-4-610(3)(D), a circuit court may grant a parent an improvement period at disposition if, "the [parent] demonstrates that since the initial improvement period, the [parent] has

---

[4]The father's parental rights were also terminated during the proceedings below. According to the parties, J.S.-1 and P.S. are placed in a foster home with a permanency plan of adoption therein. M.S. is placed with his maternal grandparents with a permanency plan of adoption by the grandparents.

experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period . . . ." Here, petitioner was previously granted a post-adjudicatory improvement period. However, the record demonstrates that petitioner could not establish a substantial change in circumstances since her initial improvement period or that she was likely to fully participate in a new improvement period.

Contrary to petitioner's argument that the testimony of several witnesses established that she was likely to participate in a post-dispositional improvement period, the circuit court, after hearing the testimony, found that several of the witnesses were not credible. Specifically, it found that the neighbors' testimony was not credible, as they had no knowledge of the abuse and only saw limited "snapshots" of the family. Further, the circuit court found that while the therapist believed the children could be returned to the home, the parents would need a year of intensive counseling. In light of that information, the circuit court found that the safety of the three young children remained at risk as they would grow and challenge the parents, much like C.M., and that no testimony established that petitioner learned how to implement the techniques she was taught through services. Moreover, the circuit court paid careful attention to the parents' testimony and found that petitioner did not demonstrate that she had enhanced her diminished capacity to parent the children. Petitioner was unable to specifically or sufficiently explain what she would have done differently regarding placing C.M. in a shed, even after extensive services had been provided. The circuit court also found that petitioner's testimony showed a continued unwillingness or inability to change and that, as of the dispositional hearing, she demonstrated no remorse for the abuse inflicted upon C.M.

We have previously held "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). While petitioner's argument heavily relies on the generally positive testimony of several witnesses, we note that the circuit court, as the trier of fact, was better able to assess the credibility of witnesses. Here, the circuit court was provided with ample testimony from several witnesses and ultimately found that petitioner failed to demonstrate that she was likely to successfully complete a post-dispositional improvement period after weighing the evidence. Accordingly, this Court will rely on the assessment of witness credibility made by the circuit court below and finds that petitioner is entitled to no relief in this regard.

Petitioner next argues that the circuit court erred in terminating her parental rights. Specifically, petitioner argues that she demonstrated that she would comply with the terms of a post-dispositional improvement period and that the circuit court failed to properly weigh the favorable testimony of the progress she made in her post-adjudicatory improvement period, erroneously affording more weight to things such as a former DHHR worker's testimony and her own incarceration.[5] Petitioner argues that she fully complied with the terms of her post-

---

[5]Petitioner raises a sub-argument in support of her assignment of error in which she argues that the circuit court erred in holding two in-camera interviews with two of the minor

(continued . . .)

adjudicatory improvement period and reunification remained the goal until February of 2017, when she was incarcerated for six months due to the related criminal case. Petitioner's argument is unpersuasive. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" We have also held that "[t]ermination . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 82, 479 S.E.2d 589, 592 (1996).

We agree with the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Although petitioner argues that the circuit court should have afforded more weight to the witness testimony than to her brief incarceration, we previously noted that the circuit court is the trier of fact and is uniquely situated to assess witness credibility. Further, we have previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014).

While the record demonstrates that petitioner completed services throughout her post-adjudicatory improvement period, the circuit court found that she failed to demonstrate what parenting skills she had learned or how she would handle things differently in the future, should she be in a similar situation as the other children get older. The circuit court found petitioner's

children, one of which occurred after the close of evidence, and without providing petitioner's counsel the ability to be present or review the transcript. Rule 8(b) of the Rules of Procedure for Child Abuse and Neglect proceedings sets forth that "[u]nder exceptional circumstances, the [circuit] court may elect not to make the recording available to the attorneys but must place the basis for a finding of exceptional circumstances on the record." A review of the record indicates that the circuit court failed to make a finding of exceptional circumstances on the record. However, petitioner fails to show how she was prejudiced by the circuit court's actions. The circuit court issued a very organized and lengthy order setting forth its findings of fact and conclusions of law as a basis for its decision to terminate petitioner's parental rights. Only three out of twenty-four findings of fact mentioned information obtained from the in-camera interviews and the children's testimony was only mentioned in passing in the conclusions of law. We have previously held that when "[p]roceedings . . . for the disposition of cases involving children adjudicated to be abused or neglected [have] been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process . . . ." Syl. Pt. 5, *In re Edward B.,* 210 W.Va. 621, 558 S.E.2d 620 (2001). Under the limited circumstances of this case, we find that the circuit court's failure to make exceptional findings on the record did not substantially disregard or frustrate the process such that vacation of the dispositional order is warranted.

testimony particularly compelling, noting that she failed to make changes in her parenting and failed to demonstrate how she would implement the information learned in her improvement period. Further, while petitioner had complied with her improvement period, her incarceration effectively stopped her from further participation or reunification for six months. By the time of the dispositional hearing, the children had been in foster care for more than fifteen months.[6] Seventeen-month-old P.S. had been with his foster parents since birth and J.S. had been with her foster parents for nearly half of her life. The circuit court found that they had not bonded with petitioner, had not had visitation with her for over six months due to her incarceration, and had established bonds with their foster parents. As such, we agree that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are to terminate parental rights based upon such findings.

Lastly, petitioner argues that the circuit court erred in denying her motion for post-termination visitation. Petitioner argues that she and her children had a strong bond, which was supported by the testimony of the witnesses. Further, petitioner asserts that even C.M. expressed a desire to communicate with petitioner and his siblings. However, petitioner is not entitled to relief in this regard. In discussing post-termination visitation, we have held

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). There was sufficient evidence upon which the circuit court could find that post-termination visitation was not in the best interests of J.S.-1 and P.S., especially in light of their young age, the fact that they had remained in the care of the foster parents since the initiation of the case, and the lack of bond between petitioner and the younger children. Further, the circuit court granted petitioner visitation with M.S., at the discretion of a caregiver, and C.M., with some restrictions. As such, we find no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 29, 2017, order is hereby affirmed.

---

[6]Pursuant to West Virginia Code 49-4-605(a)(1), "the [DHHR] shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights . . . [when] a child has been in foster care for fifteen of the most recent twenty-two months . . . ."

Affirmed.

**ISSUED**:  March 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**

Justice Robin Jean Davis